[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10403
_____

D.C. Docket No. 8:16-cv-02016-SDM-AEP

JAN RATH,
Father,

Petitioner – Appellee,

versus

VERONIKA MARCOSKI,
Mother,

Respondent – Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 10, 2018)

Before MARCUS and WILSON, Circuit Judges, and GRAHAM,[*] District Judge.

GRAHAM, District Judge:

This appeal concerns the standard for awarding attorney's fees and costs to a successful petitioner in an action for the return of a child under the Hague Convention. The International Child Abduction Remedies Act ("ICARA"), which implements the Hague Convention, directs that a district court "shall order the respondent to pay necessary expenses . . . unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). The district court held that respondent failed to meet her burden under ICARA and awarded fees and costs to petitioner. We affirm.

## I.

Petitioner Jan Rath, a citizen of the Czech Republic, initiated this suit under the Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, and the private right of action provided by ICARA, 22 U.S.C. § 9003(b). Rath petitioned the district court for the return of his child, L.N.R., after the child's mother, Veronika Marcoski, removed him from the Czech Republic to Florida in April 2016.

The district court, adopting an extensive report and recommendation by the magistrate judge, found that the Czech Republic was the place of L.N.R.'s habitual

---

[*] Honorable James L. Graham, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

residence at the time of removal.  *See* Hague Convention, art 3.  The court made its finding after weighing conflicting witness testimony and determining that Rath was credible and Marcoski was not.  The district court held that Marcoski had wrongfully removed L.N.R. from the Czech Republic and ordered that L.N.R. be returned.

Marcoski appealed the district court's decision.  This Court affirmed, holding that the district court's assessment of the credibility of the witnesses was entitled to "great deference."  *Marcoski v. Rath*, 718 F. App'x 910, 912 (11th Cir. 2017) (per curiam).  The Court found that the district court had properly considered all of the evidence in determining the place of L.N.R.'s habitual residence and did not err in concluding that it was the Czech Republic.  *Id*. at 913.

Rath moved for an award of attorney's fees and costs in the district court. The magistrate judge issued a report and recommendation concluding that Rath was entitled to an award of attorney's fees, taxable costs and expenses under ICARA.  Marcoski objected, arguing that an award would be clearly inappropriate because she acted in good faith when she removed L.N.R. to the United States. The district court rejected this argument: "[T]he record belies Marcoski's 'good-faith' defense.  For example, the last-minute, circuitous nature of Marcoski's return to the United States suggests an intent to abscond with L.N.R. . . .  And several of Marcoski's statements confirm that she attempted to seek a more favorable

3

resolution in a Florida state court after the couple's relations ended." *Rath v. Marcoski*, No. 8:16-cv-2016, 2018 WL 446651, at *1 (M.D. Fla. Jan. 17, 2018) (internal quotation marks and alterations omitted). The district court thus found that Marcoski had not established that a fee award would be clearly inappropriate. The court awarded to Rath $73,219.50 in attorney's fees, $5421.00 in taxable costs and $10,849.76 in expenses, for a total award of $89,490.26. *Id.* at *3–4.

On appeal, Marcoski challenges only the district court's determination that Rath is entitled to a fee award. She does not appeal the award amount.

## II.

"'This court reviews an award of attorney's fees for abuse of discretion; nevertheless, that standard of review still allows us to closely scrutinize questions of law decided by the district court in reaching a fee award.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1304 (11th Cir. 2001) (quoting *Clark v. Hous. Auth. of Alma*, 971 F.2d 723, 728 (11th Cir. 1992)).

An abuse of discretion occurs if the court "'fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous.'" *Gray ex rel. Alexander v. Bostic*, 613 F.3d 1035, 1039 (11th Cir. 2010) (quoting *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)). "An abuse of discretion also occurs when a district court commits a clear error of judgment." *Id.*

III.

The Hague Convention permits judicial or administrative authorities to order "the person who removed or retained the child . . . to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child."  Hague Convention, art. 26.

ICARA, however, displaces the permissive standard of the Convention with the following directive:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title *shall order* the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, *unless* the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3) (emphasis added).  The Fifth Circuit Court of Appeals has aptly described this fee provision of ICARA as imposing "a mandatory obligation" on courts to award necessary expenses to a successful petitioner, except when the respondent demonstrates that an award would be clearly inappropriate.  *Salazar v. Maimon*, 750 F.3d 514, 519 (5th Cir. 2014); *see also Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004) (stating that a district court has "the duty" to award necessary expenses, subject to the "clearly inappropriate" exception).

5

The specific language Congress used in ICARA's fee-shifting provision should not be overlooked.  A Congressional Research Service Report in 2008 estimated there to be two hundred federal statutory exceptions to the American rule that each party bears its own litigation costs.  Henry Cohen, Cong. Research Serv., *Awards of Attorneys' Fees by Federal Courts and Federal Agencies*, at Summary, ¶ 2 (2008); *accord* Alan Hirsch & Diane Sheehey, Fed. Jud. Ctr., *Awarding Attorneys' Fees and Managing Fee Litigation*, at 1 (2005).  Typical fee-shifting statutes commit to the district court broad discretion to award fees to a prevailing party.  For instance, Title VII of the Civil Rights Act of 1964 provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."  42 U.S.C. § 2000e-5(k).  *See also* Americans with Disabilities Act of 1990, 42 U.S.C. § 12205; Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b); Fair Housing Act, 42 U.S.C. § 3613(c)(2); Rehabilitation Act of 1973, 29 U.S.C. § 794a(b); Voting Rights Act of 1965, 52 U.S.C. § 10310(e).  Generally, the prevailing party "bears the burden of establishing entitlement" to a fee award and proving the reasonableness of the requested fees.  *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40, 53 (1983); *Norman v. Hous. Auth. Of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

Certain other fee-shifting statutes eliminate the district court's discretion to make a fee award.  Several, for example, direct that a district court "shall" award

reasonable attorney's fees to a prevailing plaintiff. *See* Age Discrimination Act of 1975, 42 U.S.C. § 6104(e)(1); Equal Credit Opportunity Act, 15 U.S.C. § 1691e(d); Fair Labor Standards Act, 29 U.S.C. § 216(b).

In contrast, ICARA's fee-shifting provision creates a rebuttable presumption in favor of a fee award.[1]  Again, it provides that a court "shall" award necessary expenses "unless" respondent establishes that an award would be "clearly inappropriate."  We read the statutory text as creating a strong presumption in favor of fee-shifting, rebuttable only by a showing from the losing respondent that an award of attorney's fees, costs and expenses would be clearly inappropriate. *See Salazar*, 750 F.3d at 520 (stating that "the prevailing petitioner is presumptively entitled to necessary costs"); *cf. Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007) (finding a "strong presumption" that the prevailing party would be awarded costs under a prior version of Fed. R. Civ. P. 54(d)(1), which provided that costs "shall be allowed . . . unless the court otherwise directs").

The term "clearly inappropriate" is not used in any other fee-shifting statute. According to some courts, this exception "provides the district court 'broad discretion in its effort to comply with the Hague Convention consistently with our own laws and standards.'"  *West v. Dobrev*, 735 F.3d 921, 932 (10th Cir. 2013)

---

[1]  ICARA is not alone in creating a rebuttable presumption.  The Equal Access to Justice Act, for instance, provides that a court "shall award" fees and other expenses to a prevailing party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).

7

(quoting *Whallon*, 356 F.3d at 140); *see also Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013). We offer this clarification and limiting principal: ICARA does not afford courts broad discretion on the issue of whether prevailing petitioners are entitled to an award—the statute dictates that they presumptively are—and the exception cannot be drawn so broadly as to make the analysis indistinguishable from what courts employ under a typical fee-shifting statute. *See Chafin v. Chafin*, 568 U.S. 165, 169, 133 S. Ct. 1017, 1022, 185 L. Ed. 2d 1, 9 (2013) ("ICARA also provides that courts ordering children returned generally must require defendants to pay various expenses incurred by plaintiffs . . . ."). Unless the exception is carefully circumscribed, the statute will fail to serve its function of compensating successful petitioners and providing "an additional deterrent to wrongful international child removals and retentions." H.R. Rep. 100-525, at 14 (1988), 1988 U.S.C.C.A.N. 386, 395; *see Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010) (awarding fees to petitioner's pro bono counsel, so as to deter wrongful removals and improper litigation tactics).

We recognize that the "clearly inappropriate" language comes without a statutory definition. *See Ozaltin*, 708 F.3d at 375 (noting the absence of "any statutory guidance"). In that regard, Congress did grant courts limited equitable discretion to determine when to allow an exception. It may well be that courts making this determination will look to factors that are familiar in the fee award

context.  *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19, 114 S. Ct. 1023, 1033 n.19, 127 L. Ed. 2d 455, 471 n.19 (1994); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842 (11th Cir. 1999).  But in doing so, courts must place on the losing respondent the substantial burden of establishing that a fee award is clearly inappropriate.  *See Salazar*, 750 F.3d at 522 (emphasizing respondent's "statutory obligation to come forward with evidence" to establish that a fee award was clearly inappropriate).

## IV.

Though the "clearly inappropriate" inquiry is fact-dependent, two considerations have arisen with some frequency in the case law.  One is whether a fee award would impose such a financial hardship that it would significantly impair the respondent's ability to care for the child.  *See Whallon*, 356 F.3d at 139–40 (citing cases); *Norinder v. Fuentes*, 657 F.3d 526, 536–37 (7th Cir. 2011); *Mendoza v. Silva*, 987 F. Supp. 2d 910, 917 (N.D. Iowa 2014).  A second is whether a respondent had a good faith belief that her actions in removing or retaining a child were legal or justified.  *See Ozaltin*, 708 F.3d at 375–76; *Mendoza*, 987 F. Supp. 2d at 916–17.

Marcoski relies solely on the argument that a fee award is clearly inappropriate because she acted in good faith in removing L.N.R. to the United States.  We agree that the basis for a losing respondent's course of conduct can be

9

a relevant consideration in deciding if a fee award is clearly inappropriate. *See Ozaltin*, 708 F.3d at 375 ("Although mistake of law is not a defense to the return action itself, it is a relevant equitable factor when considering whether a costs award is appropriate."). However, we find that Marcoski has fallen well short of her burden of establishing the "clearly inappropriate" exception.

The district court found that the record belied Marcoski's claim of good faith. Marcoski contends that the district court erred by taking too limited of a view of the record and confining its analysis to two factors—the "last-minute, circuitous nature" of her removal of L.N.R. to the United States and her tactic of immediately filing suit in Florida to determine child custody and support. According to Marcoski, the district court ignored evidence showing that she had a longstanding plan to raise L.N.R. in Florida and that Rath had consented to her plan.

We disagree and find that the district court did not abuse its discretion in denying Marcoski's good faith argument. Though the district court did not engage in a lengthy analysis, it cited its review of the record in rejecting her claim, much as the magistrate judge cited his comprehensive report and recommendation on the merits in refuting her claim of good faith. The reason is simple: the record developed on the merits of the wrongful removal petition is replete with evidence contradicting Marcoski's good faith argument, and the district court's factual

10

determinations on the merits were affirmed on appeal and now constitute the law of the case. *See Lebron v. Sec'y of Fla. Dep't of Children & Families*, 772 F.3d 1352, 1360 (11th Cir. 2014) ("Under the 'law of the case' doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.") (internal quotation marks omitted).

The district court did not, as Marcoski argues, confine its analysis to two factors. Rather, it selected the two examples most damaging to her claim. We review the district court's factual finding that Marcoski acted in bad faith for clear error and find none. *See In re Porto*, 645 F.3d 1294, 1304 (11th Cir. 2011). Marcoski's furtive removal of L.N.R. to the United States and her litigation tactics upon her arrival, the district court reasonably found, suggested an "intent to abscond with L.N.R." and to "seek a more favorable resolution in a Florida state court." Underpinning this conclusion were the factual determinations made earlier that Rath was completely unaware of Marcoski's plans to remove L.N.R. to the United States and that she devised her litigation strategy out of a concern over what legal measures Rath might pursue upon becoming aware she had left the Czech Republic with L.N.R.

Even if the district court had considered only these two factors, we would find no error, for they alone suffice to support a reasonable conclusion that

11

Marcoski failed to establish that a fee award would be clearly inappropriate. Marcoski's argument about evidence being ignored amounts to no more than her disagreement with the district court's prior credibility determinations.  That is not to say that a losing respondent can never demonstrate that she acted in good faith in removing or retaining a child.  But Marcoski, who argued unsuccessfully on the merits that Rath had consented to her removal of L.N.R., has chosen to support her good faith claim by attempting to re-litigate the factual determinations already made and affirmed in this case.  This she cannot do outside of her showing clear error in the prior decision, which she has not done.  *See id.*

The evidence to which Marcoski cites does not support her good faith claim in any event.  She points to a Declaration of Intent signed by Rath stating that he believed it would be in his son's best interest to be a United States citizen.  Rath also accompanied Marcoski to the United States Embassy to obtain a Consular Report of Birth Abroad and a United States passport for L.N.R.  And he signed an immunization waiver form, which Marcoski asserts was done so L.N.R. could be vaccinated in the United States.

At best this evidence shows that Rath was aware of Marcoski's belief that their son would benefit from American citizenship and that she might want to travel with him to the United States someday.  Marcoski did not submit credible evidence establishing that she had a concrete plan or time frame, known to Rath,

12

for leaving the Czech Republic with L.N.R.  Nor did she demonstrate that Rath knew of, let alone consented to, the time and manner in which she removed L.N.R.  Indeed, she staged the removal to occur while Rath was in England on business.  When he returned home and unwittingly emailed Marcoski about arranging to spend time with L.N.R., he received an email from her attorney advising him that Marcoski and his son were now "permanently residing" in Florida and that he should direct all further communications to legal counsel.

Finally, Marcoski does make one argument that does not implicate prior factual determinations, but it fares no better.  Marcoski contends that she removed L.N.R. in good faith because she relied on a legal opinion letter from a Czech attorney.  The letter, she says, expressed the opinion that an individual in her position had the right to decide where her child should live.  Marcoski cites the Second Circuit's decision in *Ozaltin*, in which the court held that a full fee award would be clearly inappropriate because the removing parent had a good faith belief that she could remove the children.

*Ozaltin* is plainly distinguishable.  There, Turkish courts supervising the parents' divorce and child custody proceedings "repeatedly implied prior to the Mother's removal of the children from Turkey . . . that the children could live with the Mother in the United States."  *Ozaltin*, 708 F.3d at 376.  The Second Circuit found that the mother's reliance on the orders of the Turkish courts formed a

13

reasonable basis for her to believe "*at the time of removing the children* to the United States in 2011 that her actions were consistent with Turkish law." *Id*. at 375 (emphasis added).

Unlike the Turkish court orders in *Ozaltin*, the legal opinion letter received by Marcoski was prepared post-removal and had no foundation in the factual circumstances of the parties. The opinion letter, dated May 19, 2016, is an after-the-fact justification for her April 21, 2016 removal of L.N.R. And it is premised on an inapplicable scenario—"where [the] parents do not live together since the birth of the child [and] the child is in fact in sole custody of one parent." Rath and Marcoski were in a committed relationship and cohabited well before L.N.R.'s birth and throughout the first six months of his life. Marcoski, an attorney herself, cannot credibly argue that the opinion letter—premised on a fact pattern not her own and written one month after she left the Czech Republic—formed the basis of a good faith belief that she had a right to remove L.N.R.

## V.

The district court did not abuse its discretion in finding that Marcoski failed to establish under ICARA that an award of necessary expenses would be clearly inappropriate. Accordingly, the district court's award to Rath of attorney's fees, costs and expenses in the total amount of $89,490.26 is **AFFIRMED**.