**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1021**

KARL HENRIK SUNDBERG,

                Petitioner - Appellee,

      v.

LISA MICHELLE BAILEY,

                Respondent - Appellant.

**No. 18-1403**

KARL HENRIK SUNDBERG,

                Petitioner - Appellee,

      v.

LISA MICHELLE BAILEY,

                Respondent - Appellant.

Appeals from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, District Judge.  (1:17-cv-00300-MR-DLH)

Argued:  October 30, 2018                Decided:  March 29, 2019

Before NIEMEYER, THACKER, and RICHARDSON, Circuit Judges.

Affirmed by unpublished opinion. Judge Richardson wrote the opinion, in which Judge Niemeyer and Judge Thacker concurred.

_____

**ARGUED:** Preston Oscar Odom, III, JAMES, MCELROY & DIEHL, PA, Charlotte, North Carolina, for Appellant. Derrick J. Hensley, LAW OFFICE OF DERRICK J. HENSLEY, Chapel Hill, North Carolina, for Appellee. **ON BRIEF:** Anastasia M. Prendergast, PRENDERGAST LAW, Asheville, North Carolina, for Appellant. F. Evan Benz, THE LAW OFFICE OF DERRICK J. HENSLEY PLLC, Chapel Hill, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

RICHARDSON, Circuit Judge:

This case involves a transnational child-custody dispute between American Lisa Bailey and her Swedish ex-husband, Karl Sundberg. In 2016, the couple agreed that their four-year-old daughter could temporarily leave her native Sweden for North Carolina with Ms. Bailey. Despite the terms of their agreement, Ms. Bailey unilaterally decided that she would keep the child in the United States permanently. Mr. Sundberg sued, seeking the return of the child to Sweden under the International Child Abduction Remedies Act. As we explain below, the district court properly granted his request.

## I.

Lisa Bailey and Karl Sundberg married in Sweden shortly after the birth of their daughter in 2013. They divorced two years later but continued to share custody of their daughter. After the divorce, Ms. Bailey had trouble finding a suitable job and lived off child-support payments and Swedish-government aid. As a result, she sought to move back to the United States with their daughter. Mr. Sundberg opposed this move because he was unable to get a permanent U.S. visa and did not want to be separated from his child.

Despite his opposition, Mr. Sundberg ultimately agreed to permit Ms. Bailey to take their daughter to America on a temporary trial basis. They memorialized this agreement in writing, providing that Ms. Bailey could take their child to the United States for "several months" beginning in August 2016. J.A. 62. The agreement also provided that in May 2017 they would "determine a future agreement about Lisa and [the child's] residence and a plan for continuing shared custody of [the child]." *Id.* Based on this

3

agreement, Ms. Bailey and the child moved to Asheville, North Carolina. After the move, Mr. Sundberg maintained a relationship with his daughter over Skype and visited her in North Carolina for five weeks in December 2016.

One month after Mr. Sundberg's visit, Ms. Bailey informed him that the temporary stay would be permanent as she did not intend to move back to Sweden. In response, Mr. Sundberg demanded that Ms. Bailey return to Sweden with their child. Ms. Bailey refused. She instead went to a North Carolina state court and sought emergency custody. To prevent this, Mr. Sundberg petitioned a federal district court in North Carolina for the return of the child to Sweden so that Swedish courts could conclusively determine custody.

The district court agreed with Mr. Sundberg. Finding that the child's habitual residence remained in Sweden, the court ordered that she be returned there. We review the court's habitual residence finding for clear error and affirm. *See Maxwell v. Maxwell*, 588 F.3d 245, 250 (4th Cir. 2009).

**II.**

The International Child Abduction Remedies Act implements the Hague Convention on the Civil Aspects of International Child Abduction. 22 U.S.C. § 9001. To obtain the return of one's child under the Act, a petitioner must show that the "child has been wrongfully removed or retained within the meaning of the Convention." 22 U.S.C. § 9003. To show this wrongful removal or retention, the petitioner must establish: (1) the child was a habitual resident of the petitioner's country of residence at the time of removal or retention; (2) the removal or retention breached the petitioner's

4

custodial rights in the country of residence; and (3) the petitioner had been exercising those rights. *See Maxwell*, 588 F.3d at 250 (citing *Miller v. Miller,* 240 F.3d 392, 398 (4th Cir. 2001)). The parties agree that Mr. Sundberg had joint custodial rights and that he had been exercising those rights. Ms. Bailey's only claim is that the child was not a habitual resident of Sweden at the time of retention in 2017.

In this framework, the district court needed only determine whether this child was habitually resident in Sweden or the United States. From birth, the child's "habitual residence" was Sweden. That habitual residence can change under either of two circumstances. *Gitter v. Gitter*, 396 F.3d 124, 133 (2d Cir. 2005). First, habitual residence changes when parents "[share] a settled intention to abandon the former country of residence." *Maxwell*, 588 F.3d at 251 (citing *Mozes v. Mozes,* 239 F.3d 1067, 1075 (9th Cir. 2001)). Alternatively, it changes when there is a change in geography coupled with the passage of time "sufficient for acclimatization by the [child] to the new environment." *Id.* (quoting *Papakosmas v. Papakosmas,* 483 F.3d 617, 622 (9th Cir. 2007)).

The first option, a shared settled intent, requires a mutual agreement to move the child permanently to the new country. This settled intent may not be shown by an agreement to move temporarily, conditionally, or on a trial basis. *Maxwell*, 588 F.3d at 251–52 (citing *Papakosmas,* 483 F.3d at 622).

The district court's conclusion that these parents lacked a shared settled intent for the child to move permanently to America is strongly supported by their written agreement. The signed agreement allowed Ms. Bailey to take the child to Asheville for

5

"several months." J.A. 62. Under the agreement, the parties would re-evaluate in May 2017 to determine "a future agreement" and "plan" for the future. J.A. 62. This agreement provided for a temporary move until the parties discussed the future in May 2017. While the agreement does not expressly state that Ms. Bailey and the child would return to Sweden, it is apparent from the agreement that the move to Asheville was not meant to be permanent.

On top of the agreement itself, other circumstances reinforce the district court's finding. While Ms. Bailey may live permanently in Sweden, Mr. Sundberg cannot spend more than three months in the United States. This makes it unlikely that he would allow the child's permanent relocation. Further, the child's aunt believed the child would return to Sweden, and even the child herself knew that she was returning to Sweden, at least for the summer.

The district court's conclusion that the agreement was temporary also finds support in a welfare application Ms. Bailey submitted to the Swedish government. Before leaving Sweden, Ms. Bailey applied for Swedish welfare payments for the child. Her application asserted eligibility for these payments by claiming the child lived in a room "rented" by Ms. Bailey from Mr. Sundberg. In reviewing this evidence, the district court reasonably relied on the application as reflecting the parents' joint intent for their daughter to return to Sweden. By contrast, Ms. Bailey contends that the application merely ensured the continued payment of Swedish welfare while the child lived in America. In other words, Ms. Bailey asks us to find that she and Mr. Sundberg were trying to defraud the Swedish government. We hesitate to rely on her claim that the

parties acted illegally. At a minimum, the district court did not err in interpreting the arrangement as supporting the temporary nature of the move.

Ms. Bailey's best evidence that she and Mr. Sundberg shared a settled intent for a permanent move comes from a portion of an email chain. Ms. Bailey wrote to Mr. Sundberg, "[w]hen it comes time for school for [the child] (which is 5-6 years old in USA), I would like to 'unschool' her." J.A. 148. Mr. Sundberg replied that he agreed. Ms. Bailey suggests this email reflects a shared intent for the child to remain in America for two reasons. First, it implies that she would begin school at the typical age for American children; second, the proposed "unschooling" is not an option in Sweden. Yet other parts of the same email chain undermine Ms. Bailey's argument. For example, the email confirms the conditional nature of the move when Mr. Sundberg reiterates that they would discuss a new residency agreement in May. Whatever one makes of the discussion about schooling, it cannot overcome the parties' agreement.

The record as a whole supports the district court's conclusion that the parents planned to discuss in May 2017 whether the move would be permanent—a discussion that never took place, because it was short-circuited by Ms. Bailey's unilateral decision to keep their daughter in the United States. Thus, we discern no clear error in the district court's finding that the parents lacked a shared settled intent to abandon Sweden as the child's habitual residence.[*]

---

[*] Ms. Bailey also raises an affirmative defense that she did not wrongfully retain the child in Asheville because Mr. Sundberg consented to the child's relocation past the date of wrongful retention. Article 13(a) of the Hague Convention does not require
(Continued)

Having determined there was no agreement for a permanent move, we turn to the second option for showing a change of habitual residence: Did the child acclimatize to the United States? A change in habitual residence based on acclimatization requires finding that the child formed such a strong attachment that ordering her return would "be tantamount to taking the child out of the family and social environment in which its life has developed." *Maxwell*, 588 F.3d at 253–54 (citing *Mozes*, 239 F.3d at 1081). This high bar should not be confused with a mere attempt to determine the "child's best interests." *Alcala v. Hernandez*, 826 F.3d 161, 171 (4th Cir. 2016). When trying to establish acclimatization, it is not enough to show that the child's life has "some minimal degree of settled purpose" in a new location. *Maxwell*, 588 F.3d at 253. Rather, "for a child to be settled within the meaning of the Convention, the child must have significant connections demonstrating a secure, stable, and permanent life in his or her new environment." *Alcala*, 826 F.3d at 170.

This child spent the first three years of her life living in Sweden, visiting the United States for only one or two months a year. Her temporary move to Ashville lasted only nine months before the agreement expired and retention became wrongful. With family and friends in both countries, the child's familial and social ties do not point to

removal if "the person, institution or other body having the care of the person of the child . . . had consented to or subsequently acquiesced in the removal or retention." Here, this affirmative defense adds little to Ms. Bailey's previous argument that the parents shared a settled intent. For the reasons explained above, the district court did not clearly err in finding that Mr. Sundberg did not consent to the child's permanent relocation to the United States.

one country over the other. Although her inability to speak Swedish may point toward acclimatization, the district court was correct that her young age makes this factor much less meaningful. *See Ahmed v. Ahmed*, 867 F.3d 682, 689 (6th Cir. 2017).

The only other evidence that suggests acclimatization is the time spent in an American school (around nine months). Attending school for one school year does little to show that the child's life has sufficiently "developed" in her new surroundings to make it her home. Thus, the district court did not clearly err in concluding that the child lacked the high level of attachment to the United States required to find that she had acclimatized.

### III.

Ms. Bailey's final complaint on appeal concerns the district court's order that she pay Mr. Sundberg's expenses totaling $20,598.98. When a court orders the return of a child, the court "*shall order* the respondent to pay necessary expenses . . . *unless the respondent establishes that such order would be clearly inappropriate.*" 22 U.S.C. § 9007(b)(3) (emphasis added). In determining whether the circumstances of a case overcome the rebuttable presumption in favor of a fee award, the district court has limited discretion. *Rath v. Marcoski*, 898 F.3d 1306, 1311 (11th Cir. 2018). An award of expenses may be "clearly inappropriate," if for example, the respondent acted in good faith or if the award would impair the respondent's ability to care for the child. *Id.* Here, Ms. Bailey cannot overcome the presumption in favor of shifting expenses. She failed to show that she acted in good faith or that any financial burden would harm the child. The district court thus appropriately awarded expenses.

\* \* \*

Child-custody disputes are among the most important and difficult our court system faces. The district judge here scrutinized the record and found, as the law required, that the child must return to Sweden for Swedish courts to determine custody. His thoughtful order is therefore

*AFFIRMED.*