[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13331
Non-Argument Calendar
_____

D.C. Docket No. 3:05-cr-00002-LC-MD-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KEVIN DEWAYNE SIMS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 13, 2020)

Before ROSENBAUM, LAGOA, and HULL, Circuit Judges.

PER CURIAM:

Kevin Sims appeals the district court's denial of his motion for a sentence

reduction under § 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat.

5194 (2018). He maintains that he was eligible for a sentence reduction and that the district court erred by failing to revisit his guideline range, including his status as a career offender, under the current Sentencing Guidelines manual. After careful review, we affirm.

## I.

In February 2005, Sims pled guilty to conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base, also known as crack cocaine. With that quantity, Sims was subject to the penalties in 21 U.S.C. § 841(b)(1)(A)(iii). The government filed an information under 21 U.S.C. § 851(a) to establish that he had previously been convicted of three felony drug offenses. As a repeat offender, he faced a statutory minimum sentence of life imprisonment.

The presentence investigation report ("PSR") determined that Sims qualified as a "career offender" under U.S.S.G. § 4B1.1 based on prior Florida state convictions for burglary of a dwelling and delivery of cannabis. Because the statutory maximum was life, his base offense level under § 4B1.1(b) was 37, instead of the base offense level of 36 that would have applied based on the drug quantity of 1.2 kilograms of crack cocaine. After adjusting for acceptance of responsibility, the PSR calculated his career-offender guideline range to be 262 to 327 months in prison. Due to the § 851 enhancement, however, his guideline range became the mandatory minimum sentence of life imprisonment. *See* U.S.S.G. § 5G1.1(b).

2

At Sims's sentencing in May 2005, the district court adopted the PSR's factual statements and guideline calculations without objection. The court ultimately sentenced Sims below the statutory minimum of life—to 240 months in prison—based on the government's substantial-assistance motion under U.S.S.G. § 5K1.1.

Approximately five years after Sims was sentenced, Congress passed the Fair Sentencing Act of 2010 to reform the penalties for crack cocaine offenses. *See* Pub. L. 111-220, 124 Stat 2372 (2010); *Kimbrough v. United States*, 552 U.S. 85, 97–98 (2007). As relevant to this case, a defendant now must traffic at least 280 grams of crack cocaine (formerly 50 grams) to trigger the highest penalties, 21 U.S.C. § 841(b)(1)(A)(iii), and 28 grams of crack cocaine (formerly 5 grams) to trigger the intermediate penalties, *id.* § 841(b)(1)(B)(iii). *See* Fair Sentencing Act § 2.[1] But until recently, these reduced penalties applied to only defendants who were sentenced on or after August 3, 2020, the effective date of the Fair Sentencing Act. *Dorsey v. United States*, 567 U.S. 260, 264 (2012).

In the First Step Act, Congress made these reduced penalties retroactive. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Section 404 of the First Step Act authorizes the district courts to reduce the sentences of crack cocaine

---

[1] In addition, the Fair Sentencing Act eliminated the five-year mandatory minimum sentence for simple possession of crack cocaine. Fair Sentencing Act § 3; *see* 21 U.S.C. § 844(a) (2005).

defendants as if § 2 of the Fair Sentencing Act had been in effect when they committed their crimes. *Id.* § 404(b).

In January 2019, Sims filed a *pro se* motion to reduce his sentence under § 404 of the First Step Act. After the district court appointed counsel, Sims filed a renewed motion arguing that he was eligible for a reduction because, under § 2 of the Fair Sentencing Act, he would have faced a minimum penalty of ten years in prison instead of life imprisonment. He further contended that the court should use the current version of the Sentencing Guidelines manual in awarding a reduction. Under current Guidelines, he asserted, he was no longer a career offender and his guideline range was 140 to 175 months.

The government responded that Sims was not eligible for a reduction under § 404 because, in its view, Sims remained subject to a mandatory life sentence under the Fair Sentencing Act based on the amount of crack cocaine he was held responsible for at sentencing. But even if Sims was eligible for a reduction, according to the government, the court should exercise its discretion to deny relief.

The district court denied Sims's motion for a sentence reduction. The court noted the "difficult and consequential" question of how to determine eligibility under the First Step Act—that is, whether eligibility is "based on the statute of conviction" or "on the actual offense conduct." But the court found it unnecessary

4

to resolve that question because, assuming eligibility, reductions under § 404 were discretionary and a reduction was not warranted in Sims's case.

In exercising its discretion to deny the motion, the district court considered "the reduced statutory range, the 18 U.S.C. § 3553(a) factors and any evidence of post-sentencing mitigation." Beginning with the amended guideline range, the court stated that, if the Fair Sentencing Act was in effect at sentencing, "his Guidelines range would remain unchanged—262 to 327 months"—because it was still driven by his career-offender status. The court found that it lacked the authority to revisit that status and that, in any event, revisiting the career-offender designation would work an injustice to prisoners serving a career-offender sentence who lacked a qualifying conviction under the First Step Act. In addition, the court found that the prior drug quantity finding at sentencing of 1.2 kilograms of crack cocaine "remain[ed] intact" and weighed against a reduction. Sims's history and characteristics also weighed against a reduction, according to the court, because his 240-month sentence served his demonstrated need for specific deterrence in light of his criminal history, which "reflect[ed] a pattern of progressively more serious drug offenses." While the court also found "countervailing factors," including Sims's earning of his GED, participation in other education programming, maintenance of stable employment, and marked improvement of his behavior, it concluded that these rehabilitative efforts did not overcome the seriousness of the offense or the needs for

5

retribution, deterrence, and protection of the public, all of which were appropriately reflected in his original 240-month sentence.

On appeal, Sims argues that the district court erred in finding that he was ineligible for relief and in refusing to recalculate his guideline range under current law. Sims reasons that, under § 404, the court was authorized to "impose" a reduced sentence, which, in Sims's view, means that the court could conduct a full resentencing in light of all relevant factors, including subsequent changes in the law beyond those mandated by the Fair Sentencing Act. Finally, Sims maintains that the 240-month sentence is both procedurally and substantively unreasonable.

## II.

We review *de novo* whether a district court has the authority to modify a term of imprisonment under the First Step Act. *United States v. Jones*, 962 F.3d 1290, 1296 (11th Cir. 2020). We review the district court's denial of an eligible First Step Act movant's request for a reduced sentence for an abuse of discretion. *Id.* A district court abuses its discretion if it applies the wrong legal standard, fails to follow proper procedures, or commits a clear error of judgment. *Rath v. Marcoski*, 898 F.3d 1306, 1309 (11th Cir. 2018).

District courts lack the inherent authority to modify a term of imprisonment but may do so to the extent that a statute expressly permits. 18 U.S.C. § 3582(c)(1)(B). As relevant here, the First Step Act expressly permits district

courts to "impose a reduced sentence for defendants as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed.'" First Step Act § 404(b). In other words, § 404 of the First Step Act makes retroactive the reduced statutory penalties for certain crack cocaine offenses under the Fair Sentencing Act, which originally did not apply to defendants who were sentenced before the effective date of that act. *See Jones*, 962 F.3d at 1297. Nevertheless, even if a defendant is eligible for a reduction, nothing in the First Step Act "require[s] a court to reduce any sentence." First Step Act § 404(c).

To be eligible for a reduction under § 404(b), the defendant must have been sentenced for a "covered offense" as defined in § 404(a). *Jones*, 962 F.3d at 1298. The term "covered offense" means "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . , that was committed before August 3, 2010." First Step Act § 404(a).

This definition generated competing views as to how to determine eligibility—that is, whether the relevant "statutory penalties" were determined based on the statute of conviction or the defendant's actual conduct. *See Jones*, 962 F.3d at 1298–1301. Much of the argument below in this case focused on this eligibility dispute. Side-stepping this dilemma, the district court concluded that, even assuming Sims was eligible, sentence reductions under § 404 were discretionary and a reduction was not warranted in Sims's case.

7

After this case was briefed, we decided *Jones*, which rejected a conduct-based approach to determining eligibility and held that a defendant has a "covered offense" if "the movant's offense triggered the higher penalties in section 841(b)(1)(A)(iii) or (B)(iii)." *Id.* at 1300–01.  Soon after *Jones*, we decided *United States v. Denson*, 963 F.3d 1080, 1082 (11th Cir. 2020), which held that the First Step Act does not require district courts to hold a hearing with the defendant present before ruling on a defendant's motion for a reduced sentence under the Act.  The parties have since filed supplemental briefs in response to our request for their views on whether *Jones* and *Denson* impact this case.

### III.

Here, the district court did not abuse its discretion by denying Sims a reduction under the First Step Act.  We find none of Sims's arguments to the contrary persuasive.

First, Sims incorrectly states that the district court found him ineligible for a sentence reduction.  In fact, the court found it unnecessary to decide Sims's eligibility because, even assuming he was eligible, he did not warrant a reduction as a matter of discretion.  We agree with Sims that, under *Jones*, he is eligible for a sentence reduction under the First Step Act because his "offense triggered the higher penalties in section 841(b)(1)(A)(iii) or (B)(iii)." *Jones*, 962 F.3d at 1300–01.  But whether to grant a reduction is discretionary.  *See id.* at 1304.  And it is unnecessary

8

to remand for further proceedings because we already know that the district court would exercise its discretion to deny a reduction. So any error at the eligibility stage of the analysis is harmless. *See United States v. Robles*, 408 F.3d 1324, 1327–28 (11th Cir. 2005) (explaining that sentencing errors are harmless when we know with certainty "what the district court would do upon remand").

Second, Sims contends that the district court erred in concluding that his guideline range remained the same after accounting for § 2 of the Fair Sentencing Act. The court arguably misspoke by stating that his guideline range "would remain unchanged" at 262–327 months. That was the guideline range calculated under the career offender guideline, without accounting for the original mandatory minimum of life imprisonment, which increased the guideline range to life imprisonment. *See* U.S.S.G. § 5G1.1(b). Because that mandatory minimum no longer applies to Sims's offense, the Fair Sentencing Act as applied retroactively through the First Step Act had the effect of lowering the guideline range back to the career offender guideline range of 262–327 months. That range "remain[ed] unchanged." In any event, Sims admits that, "according to the 2005 version of the Guidelines, Mr. Sims' guidelines range is 262–327 months' imprisonment." *See* Br. of Appellant at 31. So the court's error, if any, does not warrant reversal because the error did not affect Sims's eligibility, and the court used the correct amended guideline range.

Third, Sims maintains that the district court erred in concluding that it did not have the authority to revisit his guideline calculations and to conduct a *de novo* resentencing under the current Guidelines manual. Under the current manual, according to Sims, he is no longer a career offender and his guideline range is 140 to 175 months.

The reasoning supporting our alternative holding in *Denson* precludes the conclusion Sims urges. In *Denson*, we first held that a defendant did not have a legal right to be present at a hearing before the district court rules on a motion for a sentence reduction under the First Step Act. *Denson*, 963 F.3d at 1082. We explained that nothing in the statute itself gives defendants such a right. *Id.* at 1086–87. In addition, we explained that motions under the First Step Act are governed by Rule 43, Fed. R. Crim. P., "which expressly provides that [the defendant's] presence is not required in a § 3582(c) proceeding." *Id.* at 1087. And because "the right to be present under Rule 43 is at least as broad as the right [to be present] under the Due Process Clause," there is "no due process concern" where Rule 43 does not require a defendant's presence. *Id.* at 1087–88.

"Alternatively, and as an independent holding," we held that a "§ 3582(c) sentencing modification based on the First Step Act is not a critical stage" under *United States v. Brown*, 879 F.3d 1231 (11th Cir. 2018), which established a two-

10

part test to determine whether a modification of a sentence is a "critical stage" that requires a defendant's presence.[2]  *Denson*, 963 F.3d at 1089.

Rejecting the defendant's argument that the First Step Act gave district courts a "broad grant of discretion," we explained that "a sentence reduction based on the First Step Act is a limited remedy, and the district court is not called upon to answer questions it did not consider at the original sentencing."  *Id.* at 1085, 1089.  Thus, "the First Step Act does not authorize the district court to conduct a plenary or *de novo* resentencing."  *Id.* at 1089.

Accordingly, under *Denson*, the district court was not required or even authorized to conduct a plenary resentencing in response to Sims's First Step Act motion.  *See id.*  That's consistent with the plain terms of § 404(b), which provides for the retroactive application—looking backward to the "time the covered offense was committed"—of only "sections 2 and 3 of the Fair Sentencing Act," not of any other changes in law.  First Step Act § 404(b).  Therefore, even assuming district courts may consider the current guideline range when "determin[ing] whether and how to exercise their discretion in this context," *Jones*, 962 F.3d at 1304, the district

---

[2] The *Denson* panel first concluded that *Brown*'s two-part framework did not apply to sentencing modifications based on § 3582(c) motions.  *Denson*, 963 F.3d at 1088–89.  It then reached its alternative holding "assuming *arguendo* that we should apply *Brown*'s fact-intensive framework."  Sims maintains that the court's statements regarding *Brown* are therefore *dicta*.  But "in this circuit additional or alternative holdings are not dicta, but instead are as binding as solitary holdings."  *Bravo v. United States*, 532 F.3d 1154, 1162 (11th Cir. 2008).  And the panel's discussion of the scope of the district court's powers under the First Step Act was necessary to its alternative holding under *Brown*.

11

court here did not legally err by refusing to recalculate Sims's guideline range under current law.[3]

Finally, Sims argues that his 240-month sentence is both procedurally and substantively unreasonable. Courts are not required to grant a reduction even where a defendant is eligible, however. First Step Act § 404(c). And "[i]n exercising their discretion, they may consider all the relevant factors, including the statutory sentencing factors, 18 U.S.C. § 3553(a)," as well as post-sentencing conduct. *See Jones*, 962 F.3d at 1304 (citing *United States v. Allen*, 956 F.3d 355, 357 (6th Cir. 2020) ("[Section] 404's language does not require courts to ignore all developments that occurred after the defendant committed the covered offense when considering whether to reduce a defendant's sentence.")).

Here, the district court assumed it had the authority to grant a sentence reduction and expressly considered several § 3553(a) factors relevant to that determination. In particular, the court cited Sims's original sentence of 240 months; the guideline range as impacted by the Fair Sentencing Act; the substantial quantity of drugs for which Sims was held responsible at sentencing (1.2 kilograms of crack cocaine); his prior criminal history; and his post-sentencing rehabilitative conduct. *See id.* at 1301 ("[A] district court, of course, could consider its previous findings of

---

[3] Moreover, the district court explained why it would not revisit the career-offender designation as a matter of discretion even if it were authorized to do so.

relevant conduct in deciding whether to exercise its discretion to reduce an eligible movant's sentence under section 404(b) of the First Step Act."). Balancing these factors, the court concluded that no reduction under the First Step Act was warranted. Based on the record and the court's thorough explanation of its reasoning, we are satisfied that the court took the pertinent factors into account, balanced them reasonably, and did not abuse its discretion in denying a reduction.

Because Sims has not shown that the district court applied the wrong legal standard, failed to follow proper procedures, or otherwise made a clear error of judgment, we affirm the district court's discretionary decision to deny his motion for a sentence reduction under the First Step Act. *See Rath*, 898 F.3d at 1309.

**AFFIRMED.**