# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2014

Lyle W. Cayce
Clerk

No. 13-20234

ROSSY BELLORIN SALAZAR,

Plaintiff–Appellee

v.

JOSE ZAGHLOUL MAIMON,

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and DENNIS, Circuit Judge, and GILSTRAP, District Judge[*].

JAMES RODNEY GILSTRAP, District Judge:

Plaintiff–Appellee Ms. Rossy Bellorin Salazar ("Salazar") filed suit under the International Child Abduction Remedies Act ("ICARA") against Defendant–Appellant Mr. Jose Zaghloul Maimon ("Maimon") for the return of their child. The parties voluntarily settled their dispute and the district court entered a settlement order memorializing the terms of their agreement. Subsequently, Salazar brought a motion for attorneys' fees and necessary expenses pursuant to the fee-shifting provision of the ICARA. Maimon

---

[*] District Judge for the Eastern District of Texas, sitting by designation.

No. 13-20234

opposed the motion and asked for an evidentiary hearing. Without conducting an evidentiary hearing, the district court granted-in-part the motion for attorneys' fees and awarded Salazar $39,079.13. Maimon appeals the award of attorneys' fees as well as the failure of the trial court to hold an evidentiary hearing. We affirm.

## I.    BACKGROUND

Salazar (the mother) and Maimon (the father) are the divorced parents of a minor child. A Pennsylvania family court entered a decree in 2007 naming the parents joint legal custodians. The mother was awarded primary custody of the child and was permitted to relocate the child to Anaco, Venezuela. The father, who resides in Houston, Texas with his wife, was granted visitation custody of the child for summer and winter holidays. To facilitate transporting the child between the parents, the custody order provides that the parent gaining custody of the child is to make arrangements to travel with the child or make arrangements for a direct family member to travel with the child.

Over the next four years following the custody order, the child attended school in Venezuela and the father exercised his periods of summer and winter visitation in the United States. The custom and practice between the parties on each of the visits was for the father to make the travel arrangements and to return with the child to Venezuela, even though the mother was the parent gaining custody.

On July 10, 2011, the child traveled to Katy, Texas for a summer visit that was scheduled to last until September 12, 2011. The father informed the mother on August 22, 2011 that he could not accompany the child on the return trip to Venezuela so she should make arrangements to pick the child up in Houston. At that point, he reminded her that the custody order requires her to travel with the child or make arrangements for a family member to do

2

so. The mother responded that she did not have a visa to enter the United States and could not obtain one on such short notice. September 12, 2011 passed and the child remained in the United States.

On September 15, 2011, the father filed a custody suit in Fort Bend County, Texas and obtained a default order granting him the exclusive right to designate the child's primary residence and granting Salazar supervised visitation only. The mother received her visa to travel to the United States on November 8, 2011 and she contacted the father to retrieve the child. However, the father informed her that he could not release the child because of the intervening order signed by the Fort Bend County Court.

The mother then filed the present suit on December 2, 2011 seeking the return of her child pursuant to ICARA. A bench trial was set for March 20, 2012. On the morning of trial, the parties reached a settlement whereby the father agreed to voluntarily return the child. The Court incorporated the terms of the parties' settlement agreement into an order stating that (1) Maimon agreed to voluntarily surrender the child into the custody of her mother, and (2) authorizing Salazar to return to Venezuela with the child.

Shortly after the settlement, Salazar filed a motion for attorneys' fees and costs, seeking to recoup all the expenses she incurred in connection with her ICARA Petition. Maimon opposed the motion, arguing that since the parties settled without a trial, he did not have an opportunity to present evidence on the merits of this case; therefore there was no basis to impose fees against him. The district court entered a written opinion awarding Salazar $39,079.13 in necessary expenses, and holding that ICARA only requires the plaintiff to obtain the primary relief sought, whether by court-approved settlements or a judgment on the merits, to entitle her to a fee award under § 11607(b)(3). Maimon timely appealed.

No. 13-20234

## II.  DISCUSSION

First, we address the district court's interpretation and application of the fee-shifting provision of 42 U.S.C. § 11607(b)(3). Second, we address the Court's decision to award necessary expenses without conducting an evidentiary hearing.

## A. The District Court's Interpretation and Application of 42 U.S.C. § 11607(b)(3)

"A district court's costs award under [§ 11607(b)(3)] is reviewed for abuse of discretion." *Ozaltin v. Ozaltin*, 708 F.3d 355, 374-75 (2d Cir. 2013). "To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010). However, the district court's interpretation of the § 11607(b)(3) statute, the primary issue in this case, is subject to de novo review. *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). "The appropriate starting point when interpreting any statute is its plain meaning." *Id.* (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)). "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Id.* (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)).

Our first task "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). The inquiry ceases "if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal quotation marks omitted).

Section 11607(b)(3) provides:

4

Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

With respect to this appeal, the language in section 11607(b)(3) is unambiguous. The statute plainly states on its face that "[a]ny court ordering the return of a child pursuant to *an action* brought under section 11603 . . . shall order the respondent to pay necessary expenses." (emphasis added). Nothing in the language requires a finding of wrongful removal or retention of a child, or an adjudication on the merits, as a prerequisite for an award under this provision. Rather, the plain reading of this statute simply requires that the action be brought pursuant to section 11603 and that the court enter an order directing the return of the child.

To determine what constitutes an action brought under section 11603, we refer to the language of the relevant parts of the referenced statutory provision:

> (b) Any person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.
>
> . . . .
>
> (e)(1) A petitioner in an action brought under subsection (b) of this section shall establish by a preponderance of the evidence—
>> (A) in the case of an action for the return of a child, that the child has been wrongfully removed or retained within the meaning of the Convention; and

(B) in the case of an action for arrangements for organizing or securing the effective exercise of rights of access, that the petitioner has such rights.

When the two sections of the Code are read in tandem, the disputed statute can be interpreted in one of two ways. One interpretation emphasizes subsection (b): "any court ordering the return of a child pursuant to an action brought under the Convention shall order the respondent to pay necessary expenses." The other narrower interpretation emphasizes subsection (e): "any court ordering the return of a child who has been adjudicated wrongfully removed or retained within the meaning of the Convention shall order the respondent to pay necessary fees."

When a statute is subject to differing interpretations, the court must "examine its legislative history, predecessor statutes, pertinent court decisions, and post-enactment administrative interpretations." *Rogers v. San Antonio*, 392 F.3d 758, 761 (5th Cir. 2004).

1. ICARA and the Hague Convention

The ICARA was passed on April 29, 1988 to "ensure greater uniformity in the Convention's implementation and interpretation in the United States," and to "shorten the running-in period for effective U.S. implementation." *See* H.R. Rep. 100-528, at 17 – 18 (1987). ICARA "establish[es] procedures for the implementation of the Convention in the United States" and thereby, creates a private right of action to enforce rights under the Hague Convention. 42 U.S.C. § 11601(b)(1); 11603(b).

The objectives of the Hague Convention on the Civil Aspects of International Child Abduction, as set forth in Article I, are simply "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other

Contracting States." Stated another way, "[t]he Convention is designed to promptly restore the factual situation that existed prior to a child's removal or retention." *See* H.R. Rep. 100-525, at 5 – 6 (1988).

To facilitate these objectives, Article 26 of the Hague Convention provides the judiciary with the discretionary authority to direct an award of fees and costs upon ordering the return of the child. The counterpart to Article 26 within the ICARA is 42 U.S.C. § 11607(b)(3). However, the ICARA goes beyond the discretion bestowed by the Hague Convention and includes a mandatory obligation to impose necessary expenses, unless the respondent establishes that to do so would be clearly inappropriate. This reflects an affirmative intention on the part of Congress to impose fees in favor of the petitioner and against the respondent in return actions filed under this statute. Accordingly, the prevailing petitioner is presumptively entitled to necessary costs and the statute shifts the burden of proof onto a losing respondent to show why an award of necessary expenses would be "clearly inappropriate." *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 346 (5th Cir. 2004).

Further, the purpose of section 11607(b)(3), and Article 26 upon which it is based, intended not only intended to compensate the bearers of the expenses incurred but also "to provide an *additional deterrent* to wrongful international child removals and retention." *Saldivar v. Rodela*, 894 F. Supp. 2d 916, 926 (W.D. Tex. 2012) (emphasis added) (internal quotation marks omitted); *see* H.R. Rep. 100-525, at 14 (1988). Mandatory fee shifting discourages manipulation of the judicial process for purposes of delay and encourages the prompt return of the child.

The noticeable absence of the type of language within the statute that Maimon seeks to impose—that the court order must be based upon an adjudication of wrongful removal or retention—is a meaningful omission that

cannot be read into the statute. Congress could have included a clause such as "pursuant to *a finding of wrongful removal or retention of a child in* an action brought under section 11603," but it did not do so.

Indeed, Appellant's position should be viewed in the same vein as a similarly disfavored argument that the petitioner is not entitled to an award when represented for free by a publicly funded legal aid entity.[1] *See Saldivar*, 894 F. Supp. 2d at 928 (section 11607(b)(3) does not preclude legal aid entitles from recovering expenses because the statute provides for "necessary expenses incurred by *or on behalf of* the petitioner" and the absence of exclusionary language is a meaningful omission); *Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010) (withholding fees from pro bono counsel would undermine the Convention's policy of effective and speedy return of abducted children). Similarly, the text of section 11607(b)(3) does not specify the type of court order that obliges the court to impose necessary fees, so long as it "order[s] the return of a child pursuant to an action brought under section 11603." The rationale in *Saldivar* therefore applies with equal force to the issue considered here.

In sum, neither the language of the statute nor its legislative history provides any basis for imposing the substantive modifications that Maimon seeks. Nothing in the statute conditions the court's obligation to award fees on a trial on the merits or upon a judicial determination that Maimon wrongfully retained the child within the United States. *See Maher v. Gagne*, 448 U.S. 122 (1980) (prevailing through settlement rather than through litigation on the merits does not preclude a claim of attorneys' fees). We find that the district court correctly interpreted "[a]ny court ordering the return of

---

[1] Maimon also made this argument regarding Salazar's pro bono representation in making his opposition before the district court but chose not to pursue this position on appeal.

a child pursuant to an action brought under section 11603" to mean "any court ordering the return of a child pursuant to an action brought under the Convention." This interpretation is consistent with the plain meaning of the statute as well as the policy of the effective and speedy return of abducted children under ICARA and the Hague Convention.

2.  Prevailing Party Status

We now consider Appellant's argument that an award of necessary expenses is inappropriate when the parties have settled the case. For all practical purposes, this issue is subsumed in the prior discussion of statutory interpretation. Nevertheless, a short discussion of pertinent decisions addressing the scope and effect of prevailing party status not only provides additional context but it reinforces our conclusion.

The general practice in the United States, known as the "American Rule," is that parties are ordinarily required to bear their own attorneys' fees and the winner is not entitled to collect from the loser, absent explicit statutory authority. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 602 (2001) (citing *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)). Congress, however, has authorized the award of attorneys' fees to the "prevailing party" in numerous statutes, including the ICARA. Accordingly, this inquiry reviews the term of art "the prevailing party" in the context of awarding attorneys' fees.

The Supreme Court has identified the prevailing party as "one who has been awarded some relief by a court," such that, in addition to judgments on the merits, settlement agreements enforced through a consent decree may serve as the basis for an award of attorneys' fees. *Buckhannon*, 532 U.S. at 604 (citing *Maher*, 228 U.S. 122). "Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-

ordered 'chang[e] [in] the legal relationship between [the plaintiff] and the defendant.'" *Id.* (citing *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792 (1989)). The alteration in legal relationship is distinguished from private settlements that do not entail the judicial approval and oversight involved in consent decrees. *Id.* "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605.

Here, the district court explained the difference effectively by contrasting a private settlement and a resulting dismissal of the action under Rule 41 with the present situation, where the parties chose to invoke the injunctive powers of a federal court. Where a petitioner initiated an action to return the child, the court's consent decree does more than merely validate a compromise between the parties. "It is a judicial act." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 845 (5th Cir. 1993) (internal quotation marks omitted). An affirmative action by the judiciary reaches into the future and has continuing injunctive effects. *Id.* The settlement order here arises from the pleaded case, furthers the objectives of the law upon which the complaint is based, and was sanctioned by the district court after careful scrutiny. Under these facts, the settlement order was an adjudication by the district court that authorized an award of attorneys' fees.

Consistent with the high court, this Circuit has previously held that for a party to qualify as a prevailing party it "must (1) 'obtain actual relief, such as an enforceable judgment *or a consent decree*; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement.' " *Walker v. City of Mesquite, TX*, 313 F.3d 246, 249

(5th Cir. 2002) (citing *Farrar v. Hobby*, 506 U.S. 103, 111 – 12 (1992)) (emphasis added). Therefore, the precedent is clear that both judgments on the merits and settlement agreements enforced through consent decrees are sufficient to create prevailing party status for purposes of authorizing an award of attorneys' fees. *Id.* at 249 (citing *Buckhannon*, 532 U.S. at 604); *see also Distler v. Distler*, 26 F. Supp. 2d 723 (D.N.J. 1998) (awarded attorneys' fees under ICARA after entering a consent order).

Between the parents in the present action, Salazar is the prevailing party. Applying the three-factor test of this Circuit, Salazar was successful in obtaining the relief she initially sought. The legal relationship between the parties was materially altered when the court ordered the child returned to Salazar and authorized the child to travel back to Venezuela with her on the next available flight. The settlement order effectively accomplished the Convention's objective of promptly returning the child to the country of her habitual residence. Although Maimon's relinquishment was voluntary, the court order accepting the parties' agreement was a judicial act that modified Maimon's behavior to confer a direct benefit upon Salazar.

Accordingly, we find the settlement order was sufficient to create a duty on the district court to order an award of necessary fees and expenses under section 11607(b)(3).

## B. No Abuse Of Discretion By Declining To Conduct An Evidentiary Hearing

The district court's decision not to hold an evidentiary hearing was within its broad discretionary powers. Maimon sought an evidentiary hearing to dispute the merits of the underlying action rather than to dispute the propriety of Salazar's claimed expenses. In addressing his request, the district court properly held that "to the extent that Respondent did not have an opportunity to present evidence on the lawfulness of his retention of the

child, that has no bearing on his obligation to present evidence on the question of attorney's fees." Order at 723 (citing *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 200 (1988) (It is "indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain, [for] [s]uch an award does not remedy the injury giving rise to the action.")).

Maimon did not raise an adequate factual dispute in responding to Salazar's motion for attorneys' fees to warrant an evidentiary hearing. Once the district court ordered the child returned to Salazar, section 11607(b)(3) shifted the burden of proof onto Maimon to establish that an award of the requested necessary expenses would be "clearly inappropriate." *Sealed Appellant*, 394 F.3d at 346. Maimon had a statutory obligation to come forward with evidence to show the claimed fees were clearly inappropriate, yet he produced nothing. Salazar's motion for fees had attached to it affidavits, invoices, receipts, attorney fee summaries, billing reports, and other such documents. By contrast, Maimon's response was composed entirely of attorney arguments attempting to set forth his version of the underlying facts relating to the child's retention. It contained no exhibits, affidavits, or any evidence to dispute the necessity or propriety of the claimed expenses. Absent an actual dispute over whether the expenses were necessary, the district court had no reason to conduct an evidentiary hearing on petitioner's motion for attorneys' fees.[2]

During oral argument, counsel for Maimon argued that the fee-shifting provision in the ICARA statute requires a different evidentiary assessment than the traditional analysis of attorneys' fees. He asserted that a proper evaluation touches upon the merits of the case. However, the record shows that the parties and their counsel spent approximately three-fourths of an

---

[2] During oral argument, Maimon admitted that he did not file a motion under Rule 59 or otherwise move to contest the district court's fee award.

hour with the district court in chambers prior to agreeing on a settlement. It is hard to imagine that each parent's version of the underlying facts was not fully developed in such a candid in-chambers conference. It is our opinion that the district court took this information, as well as the four months of records before it, into account in rendering its decision on fees and expenses.

## C. $39,079.13 Award Is Not Clearly Inappropriate

Maimon contends that the district court's imposition of fees was clearly inappropriate. However, the district court did not grant Salazar carte blanche reimbursement for all expenses incurred. To the contrary, it conducted a two-step inquiry and considered twelve factors under the lodestar method to arrive at an attorneys' fee award that it considered reasonable. After careful analysis, the district court determined the billing rates to be reasonable but found the time and labor expended as excessive and therefore, unreasonable. As a result, the expenses the district court deemed necessary were reduced by almost fifty percent from the requested $75,149.91 to $39,079.13.

We find that the district court functioned within its broad discretionary powers in declining to conduct an evidentiary hearing and we defer to the district court's determination of $39,079.13 as a reasonable award for the necessary expenses incurred by Salazar in obtaining the return of her child. Appellant has presented no basis for us to conclude that the district court clearly abused its discretion.

## III.    CONCLUSION

For the foregoing reasons, the district court's grant of $39,079.13 in necessary expenses pursuant to 42 U.S.C. § 11607(b)(3) is AFFIRMED.