Filed 10/29/20; Modified and certified for publication 11/24/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHRISTIAN NOERGAARD,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>TAMMY NOERGAARD,<br><br>　　Defendant and Appellant. | G057332 (consol. w/G057363 &<br>G058095)<br><br>(Super. Ct. No. 14FL000022)<br><br>O P I N I O N |

Consolidated appeals from a judgment and postjudgment orders of the Superior Court of Orange County, John L. Flynn, Judge. Dismissed in part, affirmed in part and reversed in part.

Tammy Noergaard, in pro. per; and DeAnn M. Salcido for Defendant and Appellant.

Ruben Law Firm and Stephen B. Ruben for Plaintiff and Respondent.

\*　　　　\*　　　　\*

This opinion concerns three consolidated appeals related to a judgment for the return of a child in an international custody dispute. This case was retried after we reversed an earlier judgment marred by due process violations. Upon remand, the trial court again granted father's petition (the Hague petition) under the Hague Convention on the Civil Aspects of International Child Abduction (the Convention)[1] and its implementing legislation, the International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001-9011, for return of the child to her father's custody in Denmark, her country of habitual residence. The court also awarded father his attorney fees and other expenses (the fees award) as the prevailing party under the Convention and ICARA. Mother filed separate appeals from the return order and the fees award. She also appealed from two postjudgment sealing orders related to the parties' use of the transcript of the trial judge's confidential interview with the child during the trial.

As we explain below, mother's appeal of the return order is moot because the child is nearly 18 years old and the Convention does not apply after the child who is the subject of the return petition turns 16. (Convention, Art. 4) Mother's appeal of the fees award, however, is not moot. Despite our misgivings at lengthening a proceeding that already has gone on much too long, we conclude we must reverse the fees award because mother had no opportunity for a full and fair hearing on father's motion for fees. As for mother's appeal of the postjudgment sealing orders, we find no merit to the appeal and affirm the orders. Accordingly, we dismiss as moot the appeal of the return order, reverse the fees award and remand that matter for a new hearing limited to determining the amount of the award, and affirm the postjudgment sealing orders.

---

[1] See generally Hague Convention, October 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 49 (reprinted at 51 Fed.Reg. 10494 (Mar. 26, 1986)). We take judicial notice of the Convention. (Evid.Code, § 452, subd. (c).)

# I

## BACKGROUND

The following is a simplified summary of the facts, provided for context. The principal figures in the case, whom we refer to by their first names for clarity, are appellant Tammy Noergaard, her ex-husband and respondent, Christian Noergaard, and their minor daughter, Mia.

A. *The First Trial of the Hague Petition*

Christian, a Danish citizen, and Tammy, an American, married in California in September 2001. The couple had two children, both born in California: Mia, born in February 2003, and Sarah, born in April 2005. In late 2005, the Noergaard family moved to Europe and by October 2007, had settled in Denmark. Within a few years, the marriage fell apart, the couple separated, and a bitter child custody battle ensued.

From the start, this battle was marked by Tammy's repeated claims to Danish police that Christian was physically abusing her and the children. In November 2010, a Danish court tried and acquitted Christian of domestic violence charges. On October 13, 2011, a Danish family court awarded Christian full custody of the girls and gave visitation rights to Tammy, having concluded Tammy's repeated domestic violence claims were baseless and the high level of parental conflict was harmful to the girls and precluded shared custody.

Over the next year, Tammy challenged the custody order with multiple appeals and new charges of domestic abuse. In December 2012, Denmark's high court affirmed the custody order. Five months later, in May 2013, Mia went missing. Tammy claimed Mia had run away because she feared Christian and did not want to live with him. That was a lie, according to the trial court's findings in the recent Hague petition trial. Tammy had, in fact, orchestrated and participated in a plan to secretly get Mia out

3

of Denmark and fly her, accompanied by her maternal grandmother, into the United States.

In late January 2014, approximately eight months after Mia's disappearance, Orange County Sheriff's Department deputies found her living with Tammy in Laguna Niguel. The deputies took Mia into protective custody, acting on a warrant issued on Christian's ex parte custody demand in his Hague petition. The ensuing Hague petition trial resulted in a judgment granting Christian's petition for return of Mia to Denmark and his care.

Mia was then 11 years old. Since that first return order, Mia has lived in Denmark with her father and younger sister, Sarah. Mia will be 18 years old in a few months.

B. *The Prior Appeal*

Tammy successfully appealed the judgment in the first Hague petition trial. (*Noergaard v. Noergaard* (2015) 244 Cal.App.4th 76 (*Noergaard I*).) In that prior appeal, we concluded the trial court denied Tammy due process by failing to conduct "an evidentiary hearing on critical aspects of Tammy's objections under the Hague Convention." (*Id.* at p. 81.) Specifically, we found the court prevented Tammy from proving her affirmative defense under Article 13(b) of the Convention that returning Mia to Denmark posed a risk of "grave" harm to the child.[2] Tammy's "grave" harm defense alleged Christian had an extensive history of spousal abuse and child abuse.

We found the trial court had refused to allow Tammy to present *any* documentary or testimonial evidence in support of these allegations. Moreover, the court "declined to resolve" whether Christian e-mailed a death threat against Tammy and Mia's sister, Sarah, in July 2013. (*Noergaard I*, *supra*, 244 Cal.App.4th at p. 82.) Importantly, we also concluded the court failed to consider Tammy's contention the Danish custody

_____

[2]   The court also prevented Tammy from proving the related affirmative defense under Article 20 that returning Mia would violate her or Mia's fundamental rights.

4

order was invalid and, therefore, undeserving of comity because the Danish courts "failed to afford her a full and fair hearing on her claims [Christian] abused her and the children." (*Id*. at p. 96.)

Additionally, we found the trial court failed to consider Tammy's assertion she had filed her own Hague petition in Denmark alleging Christian "violated the Hague Convention by abducting the children to Denmark" from their home in Germany, an allegation which, if proved, would preclude the finding Denmark was Mia's habitual residence—an essential element of Christian's Hague petition. (*Noergaard I*, *supra*, 244 Cal.App.4th at p. 96.) Tammy claimed "the Danish courts ignored and never decided *her* Hague petition . . . ." (*Ibid*.)

We reversed and remanded the case back to the trial court "so mother may have her day in court" and to "ensure that the parties' triable issues are in fact tried on a full and fair presentation of the evidence." (*Noergaard I*, 244 Cal.App.4th at p. 98.) We directed that, on remand, "[T]he trial court must determine *in this case* whether the Danish court that awarded custody to [Christian] actually heard and adjudicated [Tammy's] claims of abuse." (*Id*. at p. 97.) We explained that "clearly ascertaining what has been decided in Denmark will resolve what [Tammy] can litigate in her claim of grave risk." (*Ibid*.) In other words, if the court on remand determines the Danish courts fully and fairly adjudicated Tammy's "abuse allegations that predated the 2012 Danish court orders," then Tammy is collaterally estopped from using those failed allegations to prove her "grave risk" defense in the second trial. (*Id*. at pp. 97-98.) Similarly, we noted Tammy could dispute the petition's habitual residence allegation with evidence Christian had abducted the children from their home in Germany only if Tammy's "factual claim of prior abduction [from Germany] has never been adjudicated." (*Id*. at p. 98.) Finally, we held "the trial court must determine what occurred in the Denmark proceedings so it can fully and fairly assess mother's [affirmative defense] that her or Mia's fundamental rights

5

will not be protected there.  (Convention, [A]rt. 20.)"  (*Noergaard I*, 244 Cal.App.4th at p. 98.)

C. *The Second Trial on the Hague Petition*

On remand, the trial court took pains to ensure Tammy received in the second trial on the Hague petition the due process denied her in the first trial.  The court held a lengthy evidentiary hearing lasting 13 days; Tammy called 12 witnesses, including herself, while Christian called no witnesses other than himself.  The court admitted into evidence 23 of Tammy's exhibits, including thousands of pages of translated documents, 6 of Christian's exhibits, 1 exhibit from the District Attorney, and 6 exhibits from minor's counsel.  The one obvious defect in the second trial was the significant delay which occurred between remand on April 22, 2016, and the start of trial on January 22, 2019.  Much of that delay, however, was undeniably caused by Tammy.[3]

At trial the deputy district attorney first made the requisite prima facie showing of the elements of the Hague petition (child's wrongful removal from country of habitual residence and retention in California in violation of Danish custody order).  Next, Tammy presented her case that the Danish courts denied her due process in the judicial proceedings which led to the custody order central to the Hague petition.  Then the court considered Tammy's claim Denmark was not Mia's country of habitual residence and Tammy's affirmative defenses of "grave" harm (Convention, art. 13(b)) and fundamental rights violation (Convention, art. 20).

---

[3]    Tammy's counsel requested a continuance of the trial originally set for September 26, 2017.  Tammy continuously challenged orders requiring her to contribute funds for minor's counsel and to hire an expert witness on Danish law, whom the trial court retained to assist it in understanding what happened in the Danish custody proceedings.  Tammy extensively litigated issues concerning which Danish law expert the court should retain and filed a late challenge to whether the court should use an expert witness for this purpose.  She also filed numerous discovery motions, and filed five petitions for writ relief in our court on these and other issues.

On February 4, 5 and 7, 2019, after the trial was concluded, the trial court orally stated on the record a detailed tentative statement of decision, ruling in favor of Christian on the Hague petition. Christian's counsel filed and served a Final Statement of Decision which set forth the tentative statement of decision as "taken directly from the Court transcript[.]"

On February 14, 2019, the trial court held a hearing on Tammy's objections to the Final Statement of Decision, including her objection she had insufficient time to review the document before the hearing. The court overruled Tammy's objections, and explained the shortened period for reviewing the Final Statement of Decision was unavoidable because "the order must be signed" before Mia's fast approaching 16th birthday when "the Court will lose Jurisdiction." Finding the document "correctly matches the findings and orders as stated on the record previously," the court signed the Final Statement of Decision.

The Final Statement of Decision contained a lengthy recitation of the trial court's findings of fact and law. Importantly, the court concluded Tammy failed to prove the Danish courts denied her due process in the custody proceedings. Based on the "very complete" "documentary history of this case" presented at trial, the court concluded the Danish courts fully examined Tammy's claims Christian committed physical violence and other abuse against her and the children. The court found multiple Danish courts, from the trial court through several layers of appeal ending with the Danish High Court, considered Tammy's proffered evidence of abuse. The court determined this "extensive" evidence included a wealth of reports from police, social workers and psychologists, teachers, medical professionals, neighbors, and Tammy herself. The court was satisfied the Danish legal proceedings fully and fairly considered the evidence and determined Tammy's claims of abuse were false. Consequently, the court concluded the Danish custody order was deserving of comity in the Hague proceeding.

The trial court also found Tammy failed to disprove Mia's habitual residence was Denmark at the time of her abduction. The court made the related finding Tammy never filed a Hague petition in Denmark, as she had claimed.

The court further found Tammy failed to meet her burden of proof regarding her two affirmative defenses: that Mia faced a "grave risk" of harm if returned (Art. 13(b)) because of Christian's history of domestic violence and recent death threats,[4] and Tammy and Mia faced deprivation of fundamental rights in Denmark (Article 20) because the Danish legal system routinely denies a fair hearing to noncitizen victims of domestic violence. In explaining why Tammy failed to prevail on either affirmative defense, the court carefully stated its reasons for finding Tammy's evidence, including her witnesses, unpersuasive.

We think it important to note the trial court found Tammy herself completely lacked credibility. The court found Tammy's testimony "largely false," "self-serving, evasive, frequently obstructionist, disingenuous and a non-credible narrative." The court observed, "[T]his Court's proceedings were seriously impacted in efficiency by extensive need for in-depth cross-examination of" Tammy because her testimony was often "contradicted in large measure by Danish court rulings and other [documentary] evidence" which Tammy herself introduced, but claimed not to have read. The court found Tammy lied to the court about the lack of due process in Danish courts, falsely claiming the courts there did not provide translators, and she lied to the Danish courts in her 2013 "changed circumstances" appeal by allowing her attorney to assert Tammy did not know where Mia was, though Tammy was then living with Mia in Laguna Niguel. Perhaps most damning was the court's finding, based on the court's own confidential

---

4       As for Tammy's claim Christian made death threats in July 2013, the trial court concluded her failure to mention those purported threats in her November 2013 appeal to the Danish High Court requesting a new custody trial based on "changed circumstances" barred Tammy from litigating that claim in the Hague petition trial.

8

interview with Mia, whom the court found "exceptionally straightforward and honest," that Tammy "coached and cajoled" Mia into falsely accusing Christian of abuse, and Mia told these lies "to psychologists, social workers and law enforcement individuals after the [marriage] breakup upon the insistence of her mother."

After finding Mia's "best interest and well-being . . . is best served by remaining in Denmark, again, with her father and her sister," the trial court ordered Mia's return "to her habitual residence in Denmark from which she [was] abducted and wrongly retained[.]" The court specifically reserved jurisdiction under Article 26 of the Convention (Article 26) to award Christian his expenses and costs, including attorney fees, as the prevailing party.

D. *The Fees Award*

On February 11, 2019, Christian filed and served a request for attorney fees and costs as prevailing party under article 26 and ICARA (the fees motion), with the hearing set for February 14, 2019. Tammy filed her opposition to the fees motion on February 13, 2019, requesting a continuance of the hearing for 16 days from the date Christian filed the motion, citing section 1005 of the Code of Civil Procedure [requiring service 16 court days before hearing on motion].

On February 14, 2019, at the close of the hearing on the Final Statement of Decision, the trial court heard Christian's fees motion. The court acknowledged Tammy's objection to the shortened service of notice of the hearing, but refused to continue the hearing, pointing out the court would soon lose jurisdiction over the case when Mia turned 16 years old.

The trial court heard Tammy's argument on the merits of the motion and then granted Christian's fees request in its entirety, less $50,000 he admitted receiving from the Danish government for attorney fees. The court ordered Tammy to pay attorney fees in the amount of $229,755 to Christian's counsel at the rate of $900 per month, until paid in full. The minute order from the hearing states: "The Court finds it appropriate to

9

order fees to be paid by [Tammy] based on her conduct and to deter the misuse of the legal system." The court stated it granted the fees award to Christian under Article 26 and ICARA.

E. *The Postjudgment Sealing Orders*

During trial the trial court distributed to counsel for their use copies of the transcript of its February 1, 2019, confidential interview with Mia (the confidential interview transcript). There is no record of the instructions the court gave to counsel regarding the use or dissemination of this transcript.

On February 7, 2019, Tammy filed a motion in which she quoted portions of the interview. On May 9, 2019, the court on its own motion issued an order sealing Tammy's February 7, 2019 motion and set a hearing on the matter for July 26, 2019.

At the July 26, 2019 hearing, the court ordered the parties to return the original and any copies of the confidential interview transcript to the court within 10 days. The minute order from the hearing explained the necessity for the order as follows: "[T]he Court made clear the transcripts were sealed and released to Counsel for use during trial. Now it has been brought to the Court's attention that the transcripts may have been disseminated."

F. *The Three Appeals*

Tammy filed three separate notices of appeal. The first appeal is from the judgment on the Hague petition (Case No. G057332). The second appeal is from the fees award (Case No. G057363). The third appeal (Case No. G058095) is from two postjudgment orders: the July 26, 2019 order sealing the confidential interview transcript, and the May 9, 2019 order sealing Tammy's February 7, 2019 motion quoting from that transcript.

We granted Tammy's unopposed motions to consolidate her three appeals.

10

II

DISCUSSION

A. *The Appeal is Moot as to the Order to Return Mia to Denmark.*

Tammy's appeal from the judgment on the Hague petition challenges the return order on enumerable grounds. Christian argues we need not consider any of Tammy's arguments, however, because the appeal of the return order is moot.[5] We agree.

"'Generally, an appeal will be dismissed as "moot" when, through no fault of respondent, the occurrence of an event renders it impossible for the appellate court to grant appellant any effective relief. [Citations.]' (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra,* ¶ 5:22, p. 5-5.)" (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 77-78 (*Mercury*); accord, *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214.)

Article 4 of the Convention (article 4) states: "The Convention shall cease to apply when the child attains the age of 16 years." The United States Department of State has interpreted the Hague Convention consistent with the clear wording of article 4: "The Convention applies only to children under the age of sixteen (16). Even if a child is under sixteen at the time of the wrongful removal or retention as well as when the Convention is invoked, the Convention ceases to apply when the child reaches sixteen. [(]Article 4.[)] Absent action by governments to expand coverage of the Convention to children aged sixteen and above pursuant to Article 36, the Convention itself is unavailable as the legal vehicle for securing return of a child sixteen or older." (Hague International Child Abduction Convention; Text and Legal Analysis, 51 FR 10494-01,

---

5      Christian filed a motion to dismiss the "consolidated appeal" for mootness promptly after Tammy filed her opening brief. We issued an order stating we would decide the motion to dismiss in conjunction with our decision on appeal. Christian also argued the appeal is moot in his respondent's brief.

11

10504; accord, *Gaudin v. Remis* (9th Cir. 2004) 379 F.3d 631, 638 ["it is important that this litigation conclude as quickly as possible . . . The Hague Convention will cease to apply when (the children) reach the age of sixteen"]; *Custodio v. Samillan* (8th Cir. 2016) 842 F.3d 1084, 1088 [confirming Convention no longer applied to child at age 16 despite abduction at earlier age].)

Mia turned 16 years old soon after the trial court rendered its final decision on the Hague petition. At her 16th birthday, the Hague Convention no longer applied to Mia. In other words, even if the trial court had erred somehow in the Hague proceeding, we are powerless to provide any effective relief from the return order. [6] Accordingly, we dismiss as moot Tammy's appeal of that order.[7]

B. *The Appeal of the Fees Award is Not Moot.*

---

[6] We note there is a line of cases holding an otherwise moot appeal requires a decision on the merits when the appeal includes a challenge to an attorney fees award under Code of Civil Procedure section 1021.5 (section 1021.5). (See, e.g., *Indio Police Command Unit Assn. v. City of Indio* (2014) 230 Cal.App.4th 521, 534 (*Indio*).) We find the mootness analysis in the *Indio* line of cases inapplicable to the present case, however, because section 1021.5 differs substantially from the statute governing a fees award in a Hague proceeding.

Based on the "private attorney general" doctrine, section 1021.5 gives a trial court discretion to award attorney fees to the prevailing party in a case of important public interest where the trial win confers "a significant benefit . . . on the general public," "the necessity and financial burden of private enforcement" makes a fees award appropriate, and "in the interest of justice" fees should not be paid out of any recovery. (§ 1021.5.) By contrast, in a Hague proceeding for the return of a child, ICARA mandates an award of expenses including attorney fees to the prevailing party, unless an award is "clearly inappropriate." (See Part B, below.) Given the substantial differences between these governing statutes, we decline to follow the mootness rule stated in the cases applying section 1021.5; instead, we follow the general rule that an appeal is dismissed as moot when appellate review can provide no effective relief. (*Mercury*, *supra*, 158 Cal.App.4th at p. 77-78.)

[7] In a separate order concurrently filed with this opinion, we deny Tammy's remaining requests for judicial notice and to augment and correct the record on appeal. Our dismissal of the appeal from the judgment on the Hague petition moots these requests.

Tammy separately appealed from the fees award the trial court issued under Article 26 and ICARA on February 14, 2019. Christian contends this appeal is also moot because the court "lost jurisdiction" over the Hague petition upon Mia's 16th birthday. For the reasons we explain below, we conclude the appeal of the fees award is not moot.

The law governing the award of fees and expenses to the prevailing party in a Hague proceeding for the return of a child is fairly straightforward. As the court explained in *Salazar v. Maimon* (5th Cir. 2014) 750 F.3d 514 (*Salazar*): "Article 26 of the Hague Convention provides the judiciary with the discretionary authority to direct an award of fees and costs upon ordering the return of the child. The counterpart to Article 26 within the ICARA is [former] 42 U.S.C. § 11607(b)(3) [now 22 U.S.C. § 9007(b)(3)]. However, the ICARA goes beyond the discretion bestowed by the Hague Convention and includes a mandatory obligation to impose necessary expenses, unless the respondent establishes that to do so would be clearly inappropriate. This reflects an affirmative intention on the part of Congress to impose fees in favor of the petitioner and against the respondent in return actions filed under this statute. Accordingly, the prevailing petitioner is presumptively entitled to necessary costs and the statute shifts the burden of proof onto a losing respondent to show why an award of necessary expenses would be 'clearly inappropriate.' [(]*Sealed Appellant v. Sealed Appellee*[)] [(5th Cir.2004)] 394 F.3d 338, 346.[)]." (*Salazar*, *supra*, 750 F.3d at pp. 519-520; accord, *Whallon v. Lynn* (1st Cir. 2004) 356 F.3d 138, 140; *Rydder v. Rydder* (8th Cir. 1995) 49 F.3d 369, 373-374.)

Although case law clearly supports the conclusion courts have no power under the Convention to order the return of a child who has attained the age of 16 (see above), we found no case directly addressing whether a court in a Hague proceeding has the power to decide a prevailing party's motion for fees and costs, or to review an order for fees and costs, after the child turns 16. Nonetheless, we conclude that so long as the trial court issued a *return order* before the child's 16th birthday, as happened here, the

13

court has the power to rule on the prevailing party's motion for fees and costs under Article 26 and ICARA.

The pillar of this conclusion is a small body of federal case law recognizing that in a Hague proceeding the only absolute prerequisite for an award of fees and costs to the prevailing party is an *order* for the return of the child.  For example, in *Salazar*, *supra*, 750 F.3d 514, the court held a *consent decree* for the return of the child was a sufficient basis for awarding costs and fees under Article 26 and ICARA.  In so ruling, the court rejected the responding party's argument the fees award was improper because without a trial, the petitioner could not be a "prevailing party."  (*Id.* at pp. 520-521.)  The court stated:  "Where a petitioner initiated an action to return the child, the court's consent decree does more than merely validate a compromise between the parties.  'It is a judicial act.'  [Citation.] . . . [T]he settlement order was an adjudication by the district court that authorized an award of attorneys' fees."  (*Id.* at p. 521.)

The result in *Salazar* stands in stark contrast to the result in *Allman v. Coyle* (E.D. Pa. 2004) 319 F.Supp.2d 540, where the district court concluded it had no power to award costs to father on his Hague petition for return of the child where mother voluntarily returned the child *before there was any order to do so*.  The court noted that both the Convention and ICARA "have as a precondition for awarding costs that the court 'order[ ] the return of a child.'  Because I have made no such order in this case, I have no authority to direct [mother] to pay the expenses incurred by [father]."  (*Id.* at p. 544.)

On facts more analogous to our case, the court in *Slagenweit v. Slagenweit* (8th Cir. 1995) 63 F.3d 719 (*Slagenweit*) affirmed an award of fees and costs to a prevailing party in a Hague proceeding for the return of a child despite the fact the return order had become moot.  In *Slagenweit*, the German citizen mother filed a Hague petition for return of the child to Germany.  The district court denied her petition and mother appealed.  While the appeal was pending, the district court awarded costs to father as the

14

prevailing party. Tragically, the child died during the pendency of the appeal, and the federal appeals court dismissed the appeal as moot. On remand, the district court dismissed the order denying mother's Hague petition, but concluded father was still the prevailing party and entitled to the award of costs. Mother appealed and the appellate court affirmed, holding that although the case was mooted by tragic happenstance, father was entitled to an award of costs as the prevailing party. (*Id*. at pp. 720-721, citing *Bishop v. Committee on Professional Ethics and Conduct of Iowa State Bar Ass'n* (8th Cir. 1982) 686 F.2d 1278, 1290 [dismissal on appeal of underlying claim on mootness grounds does not preclude award of attorney fees].)

Further support for our conclusion a Hague trial court has the power to award fees to the prevailing party if the court issued the *return order* before the child's 16th birthday comes from the two-fold statutory purpose of such an award. As the court explained in *Salazar*, *supra*, 750 F.3d 514, "[T]he purpose of [ICARA's section 9007(b)(3)], and Article 26 upon which it is based, [is] not only . . . to compensate the bearers of the expenses incurred but also 'to provide an *additional deterrent* to wrongful international child removals and retention.' [Citations.] Mandatory fee shifting discourages manipulation of the judicial process for purposes of delay and encourages the prompt return of the child." (*Salazar*, *supra*, 750 F.3d at p. 520.)

Those statutory purposes were undoubtedly served in the present case when the trial court issued the fees award to Christian after ordering Mia's return, based on its findings Tammy abducted Mia from Denmark, retained the child in California for eight months in violation of a valid Danish custody order, and then lied to the court throughout the Hague petition trial in an effort to prove her affirmative defenses. This case starkly illustrates the need to "discourage[] manipulation of the judicial process" and "encourage[] the prompt return of the child." ((*Salazar*, *supra*, 750 F.3d at p. 520.)

Once the trial court ordered Mia's return, ICARA obligated the court to award Christian his expenses as prevailing party. (22 U.S.C. § 9007(b)(3).) We see no

15

reason to conclude Mia's 16th birthday terminated that obligation. Though Article 4 ended the court's power to order (or prevent) Mia's return at age 16,[8] we do not read Article 4 as ending the court's power to award expenses including attorney fees under Article 26 or ICARA. We have found no case supporting that view.

Of course, if a trial court has the power to award fees and costs to the prevailing party, the appellate court has the power to review the award. Accordingly, we conclude Tammy's appeal of the fees award is not moot.

C. *The Trial Court Failed to Accord Tammy Due Process in Ruling on the Fees Motion*

Tammy challenges the fees award on multiple grounds. These include the trial court's failure to enforce the notice requirements of Code of Civil Procedure section 1005 and Tammy's resulting lack of a meaningful opportunity to review and effectively oppose Christian's fees motion. As we explain below, we conclude that error compels reversal of the fees award and a remand for a new hearing on Christian's fees motion.

---

[8] Professor Elisa Perez-Vera, the author of the Convention's authoritative legislative history known as the Perez-Vera Report, provided the following commentary on Article 4, explaining the Convention's choice of "16" as the age at which the Convention no longer applies to a child: "[T]he matter of age in the strict sense gave rise to virtually no dispute. The Convention kept the age at sixteen, and therefore held to a concept of 'the child' which is more restrictive than that accepted by other Hague Conventions. The reason for this derives from the objects of the Convention themselves; indeed, a person of more than sixteen years of age generally has a mind of his own which cannot easily be ignored either by one or both of his parents, or by a judicial or administrative authority. As for deciding upon the point at which this age should exclude the Convention's application, the most restrictive of the various options available was retained by the Convention. Consequently, no action or decision based upon the Convention's provisions can be taken with regard to a child after its sixteenth birthday." (Elisa Pérez-Vera, Explanatory Report: Hague Conference on Private International Law, *in* 3 *Acts and Documents of the Fourteenth Session* (1982) ¶ 77, p. 450, available at <https://assets.hcch.net/docs/a5fb103c-2ceb-4d17-87e3-a7528a0d368c.pdf>; see *Ozaltin v. Ozaltin* (2d Cir. 2013) 708 F.3d 355, 370 fn. 21 (*Ozaltin*) ["Elisa Pérez-Vera was 'the official Hague Conference reporter for the Convention' . . . 'Her explanatory report [was] recognized by the Conference as the official history and commentary on the Convention'"].)

Christian served Tammy with his prevailing party's motion for attorney fees on February 11, 2019, just four days before the scheduled hearing on that motion. Service of the motion clearly violated the notice provisions of Code of Civil Procedure section 1005 (16 court days' notice required before hearing). Importantly, such shortened service also implicated Tammy's due process right to a meaningful opportunity for a full and fair hearing on the motion.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 437 (*Hensley*).) "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because 'there is no precise rule or formula for making these determinations.'" (*Villano v. City of Boynton Beach* (11th Cir. 2001) 254 F.3d 1302, 1305 [quoting *Hensley*, 461 U.S. at p. 436].)

In ruling on a prevailing party's motion for fees and costs in a Hague trial, the trial court must determine whether the requested costs were "necessary" and whether an award would be "clearly inappropriate." (22 U.S.C. § 9007, subd. (b)(3).) The court may reduce the attorney hours claimed on the basis of duplication, padding, or many other factors making the requested amount unreasonable. (See *Ozaltin*, *supra*, 708 F.3d at p. 375 [recognizing award of fees and expenses under the Convention and ICARA involves "equitable principles"].) Courts applying the Convention and ICARA have reduced fees and other costs where the award would be inappropriate. (See, e.g., *Rydder v. Rydder, supra,* 49 F.3d at pp. 373-374 [reducing fees by almost half "because of Mrs. Rydder's straitened financial circumstances"]; *Whallon v. Lynn, supra,* 356 F.3d at p. 141 [noting district court's reduction by two thirds of the total fee award was within district court's discretion]; *Berendsen v. Nichols* (D.Kan. 1996) 938 F.Supp. 737, 739 [reducing requested fees and costs by 15 percent in light of father's financial status and support of his children].)

Tammy objected to the severely shortened notice of the fees motion she received and requested a continuance of the hearing so she would have sufficient time to review the motion and prepare opposition. The trial court denied the continuance, believing, wrongly, that it would have no jurisdiction to award fees after Mia turned 16.

Tammy objected to the bills Christian's counsel submitted, both as to the unreasonableness of the fees charged and the improper duplication of effort reflected in the bills, among other claims. Tammy also questioned whether Christian needed the fees award because, she alleged, the Danish government had paid substantially more money to Christian for his legal fees than the $50,000 sum he acknowledged receiving.

The trial court's determination to rule on the fees motion before "losing jurisdiction" not only severely impacted Tammy's due process rights, but also the court's ability to exercise its important discretionary function of deciding the proper amount of fees and costs to award Christian.

The minute order further confirms our view. The order states: "The Court finds it appropriate to order fees to be paid by the Respondent based on her conduct and to deter the misuse of the legal system. The Court further finds the Petitioner has incurred $229,755 in attorney fees that are owed to other parties, *based on the information that has been provided by Counsel for Petitioner*." (Italics added.) Importantly, the court relied in part on the oral representation of Christian's counsel during the hearing "as an officer of the court[.]" Tammy, however, lacked a fair opportunity to rebut the evidence supporting the fees award, primarily because the court believed it faced a jurisdictional deadline. The court on remand will be able to better assess the sufficiency of the evidence supporting Christian's fees motion after considering Tammy's opposition, if any.

We conclude the fees award must be reversed and remanded for a new hearing. We add, however, in the new hearing on the fees motion Tammy will be collaterally estopped from challenging the trial court's determination Christian is entitled

18

to an award of fees as the prevailing party. The sole purpose of the remand is to allow the trial court to determine the amount of attorney fees and other expenses to award Christian under Article 26 and ICARA.

We direct the trial court upon remand to allow Christian to amend his fees motion to include his fees and costs on appeal.[9]

D. *The Appeal of the Postjudgment Sealing Orders Lacks Merit*

Tammy also appealed from two postjudgment orders, one sealing the confidential transcript of the court's interview with Mia during trial and the other sealing Tammy's motion during trial which quoted from that transcript. It is very difficult to discern from Tammy's opening brief the basis of her objection to these two orders.

Essentially, she appears to object to the court's action in sealing the transcript and motion months after Mia turned 16, despite having stated during trial that it would "lose jurisdiction" over the case upon the child's 16th birthday. She also apparently objects to the futility of sealing records that are "already part of the public record."

---

[9] Both parties filed requests for sanctions against the other for purportedly wrongful conduct in this appellate proceeding. Tammy argued we should sanction Christian because of a misstatement in his opposition to one of Tammy's motions to augment the record. Christian asserted no party had read the sealed transcript of Mia's interview with the trial judge in the first Hague petition trial. The truth was all parties had read the sealed transcript in chambers. In his opposition to the sanctions motion, Christian acknowledged and apologized for his error. We are satisfied the mistake was innocent and not sanctionable. We deny Tammy's request for sanctions against Christian.

In his motion to dismiss the appeal, Christian included a sanctions request against Tammy for filing a frivolous appeal. Christian argued Tammy knew the appeal was moot because the trial court had warned her it would lose jurisdiction at Mia's 16th birthday. Christian argued Tammy filed the appeal solely to delay enforcement of the order to pay attorney fees to Christian's counsel and to relitigate the case. Although the issue is close, we deny Christian's motion for sanctions against Tammy. We note Tammy undoubtedly knew or should have known her appeal of the return order was moot, given the trial court's clear advisement of the significance of Mia's 16th birthday. Nevertheless, because we find the appeal of the fees award is *not* moot, we decline to sanction Tammy.

There is absolutely no merit to Tammy's appeal of these two postjudgment orders. Consequently, we affirm the orders.

## III

### DISPOSITION

We dismiss as moot the appeal from the judgment on the Hague petition ordering Mia's return to Denmark. We reverse the fees award and remand Christian's motion for attorney fees and expenses as prevailing party to the trial court for further proceedings consistent with this opinion. The postjudgment sealing orders are affirmed.



ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.

20

Filed 11/24/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHRISTIAN NOERGAARD,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TAMMY NOERGAARD,<br><br>    Defendant and Appellant. | G057332 (consol. w/G057363 & G058095)<br><br>(Super. Ct. No. 14FL000022)<br><br>ORDER DENYING REHEARING, MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGMENT |

The application of Voices Set Free-Intercept Abuse and International Victims Action Center for leave to file an amicus curiae letter of support for appellant's petition for rehearing is DENIED.

Appellant's petition for rehearing is DENIED.

It is ordered that the opinion filed in the above-entitled matter on October 29, 2020, is hereby MODIFIED as follows:

1.      On page 6, in the first full paragraph, delete the last sentence which begins, "Much of that delay," and replace it with the following sentence:

Tammy herself, however, contributed to that delay.

2.      Also on page 6, in footnote 3, keep the first sentence of that footnote which begins, "Tammy's counsel requested"; delete everything that follows that sentence and insert the following text:

> Tammy filed repeated challenges to trial court orders requiring her to share equally with Christian the cost of paying minor's counsel as well as the cost of hiring experts under Evidence Code section 730.  Tammy also extensively litigated various issues in connection with the court's choice of a Danish law expert under Evidence Code section 730.

There is no change in the judgment.

Respondent filed a request for publication of the opinion.  We find the opinion satisfies the standards for publication set forth in rule 8.1105, subd. (c) of the California Rules of Court.  We GRANT the request for publication and order the opinion certified for publication.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.


2